In the Interest of:  K.C.

**Appeal of:  R.C., Natural Father**

Superior Court of Pennsylvania.

Argued March 29, 2006.
Filed June 26, 2006.

Heather Papp, Cranberry, for appellant.

David L. Montgomery, Butler, for appellee.

Daniel E. Houlihan, Butler, for Butler County Children and Youth, participating party.

BEFORE: FORD ELLIOTT, P.J., BOWES, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 R.C. ("Father") appeals the trial court's Order approving the continued placement of K.C. ("Child") in foster care. In support of his appeal, Father argues that the trial court erred because Father has remedied the reasons for placement and the underlying finding of dependency. Father also argues that the trial court erred because continued placement is a violation of his right to due process, is tantamount to termination of Father's parental rights, and because continued placement is not in Child's best interest. After review, we find that Father's contentions are without merit and we affirm the trial court's Order.

¶ 2 Father was arrested in February of 2004 and charged with various drug trafficking offenses. The offenses occurred within the home. Following his arrest, Child and her siblings were removed from the house.

¶ 3 Child was ultimately adjudicated dependent in February of 2004 and she was placed in a foster home but visited with Father every weekend. Child's siblings were placed with their mother; however, due to conflicts between Child and her mother, Child was placed in a kinship home. Child is a bright 17–year old. She is on the honor roll at her high school. Child is happy in her foster home and continues to do well academically and socially.

¶ 4 Pursuant to the family service plan ("F.S.P."), Father was required to meet a number of goals, including attending parenting classes, maintaining clean and safe housing, and providing six consecutive months of negative drug tests. Father complied with all of the requirements and the parties do not dispute that the goals of the F.S.P. were met.

¶ 5 Following the completion of these goals, Father filed a Petition for Early Review Hearing on December 8, 2004. The trial court granted Father's petition. A permanency hearing was held before the Juvenile Court Master, Gwilym Price, on June 10, 2005. Father and Child both attended the hearing. Following testimony from Child's caseworker, Child's in-home advocate and Child, the Master found that the Child should remain in foster care, that the Butler County Children and Youth Agency should continue to attempt to heal the relationship between Father and Child and that the goal of the case should be changed to independent living for Child. Supplemental Findings, 07/05/05, at 3. The trial court adopted the recommendation and findings of the Master as set forth in a July 7, 2005 Order.

¶ 6 Father appealed from that Order and presents only one question for our review:

I. Whether the Butler County Court of Common Pleas, Juvenile Division, committed reversible error in approving the continued placement of juvenile [K.C.], No.:43 of 2004, when

the Appellant, natural father has remedied the reasons that necessitated placement of said juvenile.

Brief for Appellant at 7. We note that the issue and factual scenario currently before this Court are of first impression. We are asked to decide whether the trial court erred in approving continued placement of a bright, 17–year old Child, who has repeatedly and strenuously stated that she does not want to return to her Father, despite the fact that Father has remedied the problems that required Child be placed in foster care. Although this is an issue of first impression, our scope and standard of review of an Order regarding a permanency review are well-established.

> [W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In re C.M.*, 882 A.2d 507, 513 (Pa.Super.2005) (citations omitted).

¶ 7 At the hearing, Child testified that she did not want to return to Father's home. She testified that she was uncomfortable in Father's home, that she does not communicate well with Father, and that she spends the majority of the time she is visiting with Father in her room. Notes of Testimony ("N.T."), 06/10/05, at 14, 15. Child further stated that she did not believe that Father was reliable and expressed concern at the fact that Father was under house arrest. N.T., 06/10/05, at 19, 21. She also testified that she was angry at Father because of his drug use and the life she lived before, specifically, that Father was never there and Child felt as though she had to raise her other siblings. N.T., 06/10/05, at 17, 18. Finally, she testified that her desire to remain with her foster family was not because she has more opportunities there, but rather because of her feelings toward Father based upon the way he acted in the past. N.T., 06/10/05, at 25. Father and Child have gone through counseling, although, according to Child, it has not improved their relationship.

¶ 8 Father argues that the trial court erred in approving continued placement because he complied with the recommendations of Butler County Children and Youth Services and remedied the reasons that Child was removed from the home. Brief for Appellant at 11. He further claims that pursuant to the Juvenile Act, 42 Pa.C.S. § 6301, if a parent can provide a child with safety, care and protection, the parent must be given the child. Brief for Appellant at 11. In this case, Father alleges that he has satisfied all of the goals of the F.S.P., and for that reason, he should be reunited with Child. *Id.* Father further argues that because lack of compliance with the goals set forth in an F.S.P. is often a reason why reunification does not occur, his compliance with F.S.P. requires reunification. Brief for Appellant at 15–16.

¶ 9 When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best inter-

est, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney*, 393 Pa.Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent ... the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of the Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." *In re E.F.V.*, 315 Pa.Super. 246, 461 A.2d 1263, 1267 (1983) (citation omitted). When a trial court is determining where or with whom a child should be placed, the express "wishes [of the child] do constitute an important factor that must be carefully considered in determining the child's best interests." *Myers v. DiDomenico*, 441 Pa.Super. 341, 657 A.2d 956, 958 (1995). The child's wishes must be based upon good reasons, and the child's maturity and intelligence must be taken into account. *See id.* Finally, we note that "the weight to be attributed to the child's testimony can best be determined by the judge before whom the trial court testified." *Id.*

¶ 10 Preliminarily, we note that at the time of the hearing, Child was 16–years old. She had recently completed 10th grade and was a member of the National Junior Honor Society. The Master described Child as "very thoughtful and intelligent" and found that she expressed her wishes in a rational and reasonable manner. Supplemental Findings, 07/05/05, at 2.

¶ 11 On appeal, Father argues that Child's reasons for not wanting to reunite with Father are "materialistic" and do not support the trial court's approval of continued placement. Brief for Appellant at 22. Father even goes so far as to state that a child may wish to eat candy all day long, but that does not mean it is in the child's best interest to do so. Brief for Appellant at 24. Father supports his argument with snippets of Child's testimony that are not a true reflection of Child's testimony. Indeed, Father fails to address the residual anger Child feels towards him due to his parenting style, former drug use and drug dealing and the fact that Child performed the majority of the child raising and housekeeping responsibilities when she lived with Father. Although she stated that money is not a concern in her foster home, unlike living with Father, where money is a concern, Child also testified to other, more compelling reasons why she did not want to return to living with Father. Father's claim that Child's reasons are materialistic is not an accurate representation of Child's testimony. Indeed, in reaching his decision, the Master specifically found that "it is not the goal or purpose of the [c]ourt to leave a child with a foster home because the court has made a value judgment that the new foster home offers the juvenile a better, more comfortable lifestyle. That is not the rationale for this recommendation." Supplemental Findings, 07/05/05, at 2.

¶ 12 Father also argues that continued placement is not in Child's best interest because it essentially allowed Child to divorce her Father, because Child will regret her choice when she is older, and because Child is manipulative. Brief for Appellant at 24.

¶ 13 In his Supplemental Findings, the court found that it would not impose a forced relationship on Child at this point in her life, as Father apparently failed to establish a loving bond with Child prior to

her placement. Supplemental Findings, 07/05/05 at 2. The court also specifically dealt with Father's divorce argument, finding that Father's "own actions and behavior have created a situation where there is no significant father daughter relationship for the court to sever." *Id.* at 3.

¶ 14 To the extent that Father is arguing that a different result is required because Child is manipulative, this is a credibility determination that is within the sound discretion of the court, who was at the hearing and able to best assess the credibility of the witnesses. *See In re C.M.,* 882 A.2d at 513. The court found Child to be thoughtful, reasonable and intelligent. At the hearing, the Master also heard the testimony of a case worker, who testified that she believed Child was manipulative. The Master found Child to be more credible and we will not disturb that credibility assessment on appeal.

¶ 15 The Master further found Child to be an intelligent and very thoughtful young woman who is ashamed of Father's criminal activity. The Master noted that Child does not believe that Father is a good housekeeper, that he is not sensitive towards her as a teenage girl, and she questions his ability to maintain an acceptable standard of living. Supplemental Findings, 07/05/05, at 1–2. The Juvenile Master recommended continued placement of Child because "the parent child relationship appears to have been greatly damaged by the father's past actions, not only the criminal matter, but apparently his overall parenting style." Supplemental Findings, 07/05/05, at 1.

¶ 16 The Master ultimately recommended that Child remain in foster care with the goal changed to independent living for Child, which the trial court adopted via the appealed Order. In reaching this decision, the Master noted that in the dependency context, the refusal of a child to return home or a threat by the child that he or she will run away if forced to return home often weighs in favor of a finding of dependency. It would be irrational, the Master reasoned, to give weight to these extreme behaviors and not give the same weight to a child that has expressed her wish not to return home "rationally and reasonably." *Id.* at 2.

¶ 17 In support of his question on appeal, Father raises several issues that he did not raise in his 1925(b) Statement. In his 1925(b) Statement, Father stated that the trial court erred when it approved the continued placement of Child despite the fact that Father remedied the reasons for the placement. However, in his brief to this Court, Father argues that the trial court erred for a number of reasons that are not stated in his 1925(b) Statement and could not reasonably be extrapolated from that Statement. Indeed, in his brief, Father argues that the trial court's Order should be reversed because it constitutes a violation of his due process rights, and that the trial court's Order is tantamount of a termination of his rights without the proof required by 23 Pa.C.S. § 2511.

¶ 18 It is well established in this Commonwealth that any issues not raised in a 1925(b) Statement are waived. *See Commonwealth v. Castillo,* 585 Pa. 395, 888 A.2d 775 (2005); *In re D.M.,* 556 Pa. 160, 727 A.2d 556, 557 n. 1 (1999) (finding that appellant waived state constitutional claim because he failed to raise it in his 1925(b) Statement). Indeed, as our Supreme Court stated in *Castillo,* the purpose of a 1925(b) statement is to allow the trial court "to opine upon the issues which the appellant intends to raise, and thus provide appellate courts with records amenable to meaningful appellate review." 888 A.2d at 779. "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial

court is impeded in its preparation of a legal analysis pertinent to those issues." *Lineberger v. Wyeth,* 894 A.2d 141, 148 (Pa.Super.2006).

¶ 19 Father failed to include any of the above issues in his 1925(b) statement and, consequently, the trial court was unable to address these issues in its opinion in support of the Order. Consequently, we find Father's issues relating to the constitutionality of the order and the alleged termination of his rights to be waived.

¶ 20 In this case, considering the Child's age, maturity, intelligence and her reasons for wanting to remain in foster care, as well as the record before this Court, we find that the trial court did not abuse its discretion in approving continued placement for Child and a change of goal to independent living even though Father remedied the problems that were the immediate cause of Child's placement.

¶ 21 Order **AFFIRMED.**