J-S72042-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CASSIE GILLEN D/B/A CASSANDRA'S FLORALS, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LUCA PAGANICO, | : | |
| | : | |
| Appellant | : | No. 903 WDA 2014 |

Appeal from the Judgment Entered May 1, 2014
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): AR 11-003996

BEFORE:  BENDER, P.J.E., SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:        **FILED DECEMBER 15, 2014**

Luca Paganico (Paganico) appeals from the judgment entered against him and in favor of Cassie Gillen d/b/a Cassandra's Florals (Gillen) in the amount of $4,500 after a non-jury trial.  We affirm.

This case arises from an agreement between Gillen, a business owner who provides, *inter alia*, floral arrangements for weddings, and Paganico, a business owner that provides graphic design and printing services for businesses.  Gillen filed a complaint against Paganico with the magisterial district judge.  On April 26, 2011, judgment was entered in favor of Paganico and against Gillen.  On May 26, 2011, Gillen filed a complaint in the Arbitration Division of the Court of Common Pleas of Allegheny County requesting $6,000.  Paganico responded with an answer and counterclaim.

_____

* Retired Senior Judge assigned to the Superior Court.

On April 17, 2012, the arbitration panel found in favor of Paganico on the complaint and in favor of Gillen on the counterclaim. Gillen appealed for a trial *de novo* to the Court of Common Pleas. The matter was heard non-jury, with only Gillen and Paganico testifying to the following facts.

Gillen testified that she met Paganico in April of 2010, and the two agreed orally to a barter contract whereby Gillen would provide flowers for Paganico's upcoming wedding, and in exchange, Paganico would design and provide business cards, postcards, and signage for Gillen's business. After some additional phone calls and e-mails, Gillen asked Paganico to put the agreement in writing.

On May 30, 2010, both Gillen and Paganico signed a document setting out the scope and agreement related to the work. Of note, the agreement represented that Paganico had completed all artwork and delivered one vinyl banner to Gillen, and would complete the business cards, postcards, and storefront aluminum signage by June 30, 2010. The agreement also showed that Gillen would provide numerous bouquets, boutonnieres, and several floral arrangements to the church on June 5, 2010, the date of the wedding. The agreement also provided that Gillen was entitled to $600 for her work, with Paganico having already paid $500, and he would pay the additional $100 at the flower delivery at the wedding.

Gillen testified that she provided all of the items to which she agreed. N.T., 3/20/2013, at 11. She arrived at the church two hours before the

wedding to set the flowers up as she had agreed to do. Paganico arrived approximately 30 minutes before the wedding, and Gillen testified that he told her "everything was beautiful." *Id*. at 14. She further testified that Paganico did not pay her the additional $100. Gillen then produced photographs from her portfolio of flowers at the church. *Id*. at 16-17.

Gillen further testified about the value with respect to her work. She indicated that she had out-of-pocket expenses of $2,953 for this work. *Id*. at 21. However, she indicated the value of her work was $6,000, as industry average mark-up is two to three times the cost. *Id*. at 21-22.

Gillen also testified about the work that was provided to her by Paganico. She stated that she never received the digital images of the art work. *Id*. at 23. She also testified that he delivered the postcards and business cards, but they were not useable and she had not approved the image on the front. *Id*. at 25. She testified she received the agreed upon vinyl banner, but never received the permanent aluminum sign.

Paganico also testified. He testified that he advised Gillen that the design she chose would not work for the business cards, and he did not recommend it. *Id*. at 82. Paganico testified that he paid for 5,000 postcards, 5,000 business cards, and the vinyl banner, all of which cost him $1,000. Moreover, Paganico testified that someone affiliated with Gillen called him and demanded $500 or he would not have flowers for the wedding because "they were going to hold it hostage." *Id*. at 89. Thus,

Paganico stated that he put the agreement into writing because of these concerns. The agreement indicated that Paganico and his fiancé did not like roses and calla lilies. *Id*. at 91. Paganico testified that he was "[d]isappointed" with the flowers because they were not the quality expected and included roses and calla lilies. *Id*. at 92. He also testified that not all of the bouquets and flower arrangements were provided and some of the flowers in the boutonnieres were dead and wilted. *Id*. at 93.

He indicated that he did not provide the final aluminum sign because he had already upgraded the vinyl banner. Furthermore, he stated that he told Gillen how disappointed he was with the flowers when he delivered the postcards. Moreover, he stated that Gillen approved the business cards and fliers.

The trial court found in favor of Gillen and against Paganico in the amount of $4,500. The trial court also found in favor of Gillen on the counterclaim. Paganico filed a motion for post-trial relief, which was denied on June 24, 2013. This appeal followed.[1] Both Paganico and the trial court complied with Pa.R.A.P. 1925.

On appeal, Paganico sets forth four issues for our review.

> 1. Whether the trial court erred in allowing certain testimony relating to [Gillen's] claims for damages?

---

[1] Paganico filed an appeal on July 22, 2013. However, this Court quashed the appeal as interlocutory, as judgment had not yet been entered on the verdict. Judgment was entered on May 1, 2014, and this appeal followed.

        2. Whether the trial court erred in failing to consider any of the exhibits [Paganico] provided at trial?

        3. Whether the trial court erred in using the May 30, 2010 written document as the basis for the contract between the parties?

        4. Whether the trial court erred in failing to allow [Paganico] to present a closing argument?

Paganico's Brief at 2.

We set forth our well settled standard of review for an appeal from a non-jury verdict.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.  The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

**Stephan v. Waldron Elec. Heating & Cooling LLC**, ___ A.3d ___, 2014 WL 4656415, at *3-4 (Pa. Super. 2014).

First, we point out that all four of Paganico's issues are woefully underdeveloped.  There are no citations to the record or transcript, in violation of Pa.R.A.P. 2119, and three of the four issues contain no citation to legal authority.  "The argument portion of an appellate brief must include

- 5 -

a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a)." **Estate of Lakatosh**, 656 A.2d 1378, 1381 (Pa. Super. 1995).

For example, in his first issue Paganico argues that "Gillen admitted at trial [that] approximately fifty percent (50%) of the invoices Gillen presented into evidence were for flowers not used in Paganico's wedding." Paganico's Brief at 6. Our review of Gillen's testimony reveals no such admission; moreover, there were no exhibits entered into evidence, and no such exhibits are included in the certified record.[2] In fact, when counsel for Paganico asked, "Is it safe to say that you included in your damage estimate probably more than 60 percent of flowers that had nothing to do with my client's wedding?" Gillen responded, "No." N.T., 3/20/2013, at 69.

With respect to his second issue, Paganico argues that he "offered numerous exhibits to substantiate his claim, including samples of the services Paganico provided to Gillen, as well as pictures of the flowers Gillen provided for Paganico's wedding." Paganico's Brief at 7. However, no exhibits or photographs were entered into evidence or are included in the certified record; thus, it is impossible for this Court to consider whether "it

---

[2] Gillen's pre-trial statement does contain a summary of her damages, but does not include any invoices.

was legal error for the trial court to render [a] verdict for Gillen without such consideration of Paganico's exhibits." *Id*.[3]

Paganico also contends the "trial court erred in rendering its verdict based on the May 30, 2010 written document as [a] basis for the contract." Paganico's Brief at 7. However, Paganico does not explain how this document, which he drafted, differs materially from the April 2010 oral agreement and would entitle him to relief.[4]

Finally, Paganico contends the trial court erred in failing to allow Paganico "to present an address at the close of testimony." Paganico's Brief at 8. Paganico does not refer to any place in the transcript where he asked to present a summation. Moreover, our review of the transcript does not reveal that Paganico ever asked to make a summation. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Accordingly, Paganico has also waived this issue for review.

Thus, with respect to all four issues raised on appeal, Paganico is not entitled to relief. All of these issues are either waived for failure to preserve them at the trial court, for failure to raise them in the concise statement, for

---

[3] Furthermore, this issue was not raised in Paganico's concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925; and is therefore waived on that basis as well.

[4] This issue also was not raised in Paganico's concise statement.

failure to develop an argument, or for failure to reference the transcript or relevant legal authority.

In the end, this was a simple, two witness non-jury trial where the trial court listened to both witnesses and concluded that Gillen was entitled to damages. The trial court was "required to make a credibility determination and found in favor of [Gillen]." Trial Court Opinion, 8/4/2014, at 3. "It is well established that the credibility of witnesses is an issue to be determined by the trier of fact." *Woods v. Cicierski*, 937 A.2d 1103, 1105 (Pa. Super. 2007). The trial court further concluded that Gillen

> explained the value of her claim and explained that the wholesale number was a number greater than cost but less than the retail value of the services performed. The [trial court] gave credibility to her testimony and properly accepted her valuation. [Paganico] did not object to her testimony, but rather disputed her valuation.

Trial Court Opinion, 8/4/2014, at 3.

Because the trial court properly exercised its discretion in finding Gillen credible, we find no error in the trial court's conclusion with respect to damages. Furthermore, the trial court explained that it accepted Gillen's $6,000 request for damages, and subtracted the $1,000 in value Paganico placed on the goods he provided to Gillen, as well as the $500 he paid to her. Thus, the trial court entered a verdict in favor of Gillen for $4,500. Because these calculations are supported by the record, Paganico is not entitled to a new trial.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2014