J-A25021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THE CLASSIC LIGHTING EMPORIUM, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ERIE INSURANCE EXCHANGE | |
| Appellee | No. 3158 EDA 2014 |

Appeal from the Judgment Entered October 13, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): June Term, 2013 No. 3908

BEFORE:  DONOHUE, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                FILED NOVEMBER 17, 2015

Appellant, The Classic Lighting Emporium, Inc. (Classic Lighting), appeals from the October 13, 2014 judgment entered in its favor and against Appellee, Erie Insurance Exchange (Erie Insurance), for $14,239.29. After careful review, we affirm.

We summarize the facts and procedural background of this case from the certified record and the trial court opinion as follows.  Classic Lighting sells various antiques, including a large selection of lighting fixtures.  To protect its inventory, Classic Lighting carried a $600,000.00 insurance policy with Erie Insurance.  The policy, however, did not cover the building.

_____

[*] Former Justice specially assigned to the Superior Court.

On July 10, 2012, Classic Lighting's inventory was damaged by smoke and soot from a warehouse fire four blocks away. As a result, Classic Lighting's owner, Thomas Fasone, retained a public adjuster, Citizens Public Adjusters (Citizens), to represent him in a claim for property damage. On July 17, 2012, Mark Costello of Citizens, acting on behalf of Classic Lighting, reported the smoke and soot damage to Erie Insurance.

On July 25, 2012, Erie Insurance sent a claims adjuster to Classic Lighting to investigate the claim. Due to the amount of the loss, however, the claim was reassigned to a second adjuster, James Powers. Subsequently, on August 2, 2012, Powers inspected the loss. Powers then retained Mellon Certified Restoration (Mellon) to prepare an estimate for the cost of cleaning Classic Lighting's inventory. Mellon's estimate, prepared by David Park, indicated it would cost $71,196.46 to clean the entire inventory. On the other hand, Classic Lighting's adjuster, Costello, estimated that it would cost $524,498.58 to restore the building and the inventory.

Based on the Mellon estimate, Erie Insurance issued a check for $56,457.17 to Classic Lighting and Citizens. That amount represented the $71,196.46 estimate minus the $500.00 policy deductible and the $14,239.29 "recoverable holdback." Under the policy, the entirety of the recoverable holdback would be remitted to Classic Lighting upon proof of the completion of the repairs. Powers followed up with Costello to check on the status of the repairs in anticipation of releasing the recoverable holdback.

However, on April 19, 2013, Costello advised Powers that Classic Lighting did not intend to seek the recoverable holdback and that Powers could close the file.

On July 31, 2013, Classic Lighting filed a one-count complaint against Erie Insurance for breach of contract in the Philadelphia County Court of Common Pleas. The complaint sought damages based on Costello's estimate of $524,498.58. Thereafter, on August 27, 2013, at the request of Jack Winters, the new Citizens public adjuster assigned to Classic Lighting, Powers re-inspected the loss, which resulted in Erie Insurance submitting a request to Park of Mellon to issue a supplemental estimate. Accordingly, Park issued a supplemental estimate on behalf of Mellon for $104,093.26; Winters also issued a revised estimate for $295,070.19.

On October 7, 2013, Fasone signed a sworn and notarized proof of loss certifying that the whole loss was $104,093.26. Consequently, Erie Insurance issued a supplemental payment of $32,896.80 to Classic Lighting, which was the difference between the first Mellon estimate of $71,196.46 and the supplemental estimate of $104,093.26. Thus, Classic Lighting received a total of $89,353.97 from Erie Insurance for the loss. Erie Insurance retained the $14,239.29 recoverable holdback because Classic Lighting had not submitted proof of any repairs.

Despite these payments, this case proceeded to a bench trial on July 28, 2014. At the trial, Classic Lighting presented the testimony of Fasone.

Erie Insurance presented Powers and Park; Park was qualified as an expert regarding cleaning soot damaged items. The trial court "accepted the opinions from Mr. Park as credible and accurate and f[ound] that they prove that the restoration of [Classic Lighting's] inventory could be completed for the amount of the Mellon [supplemental] estimate[, $104,093.26]." Trial Court Opinion, 3/26/15, at 6. Further, the trial court found Fasone's testimony "was not credible because he was unable to provide any evidence in support of [Classic Lighting's] claim for additional insurance proceeds over and above the amount paid[, $89,353.97,] and the $14,239.29 holdback." *Id.* at 7. Because Erie Insurance had not tendered the $14,239.29 holdback to Classic Lighting, the trial court entered a verdict on August 12, 2014 in favor of Classic Lighting for that amount. *Id.* at 13.

On August 21, 2014, Classic Lighting filed a timely post-trial motion, which the trial court denied on September 18, 2014. On October 13, 2014, Erie Insurance filed a praecipe to enter judgment in favor of Classic Lighting and against Erie Insurance for $14,239.29. On October 20, 2014, Classic Lighting filed its timely notice of appeal.[1]

On appeal, Classic Lighting presents the following six issues for our review.

---

[1] The trial court and Classic Lighting have complied with Pennsylvania Rule of Appellate Procedure 1925.

1. Whether the trial court committed errors of law and fact and abused its discretion in finding in favor of Classic Lighting for only $14,239.29 when evidence established that the measure of damages is the cost charged by Classic Lighting to clean and restore all smoke damaged light fixtures at its property totaling $346,500.00[?]

2. Whether the trial [c]ourt erred in its finding of damages when Erie Insurance [] admitted through its representative that it owes damages equal to the cost estimated by Classic Lighting to clean the fixtures, $346,500.00[?]

3. Whether the trial court erred in its finding that Classic Lighting is not entitled to damages based on the estimate of Mr. Fasone, the owner of Classic Lighting, which is contrary to the evidence presented at trial, namely that Classic Lighting's estimates for time and value of work were unrebutted[?]

4. Whether the [t]rial [c]ourt committed errors of law and fact and abused its discretion in denying [Classic Lighting's] [m]otion for [p]ost-[t]rial [r]elief where evidence established that the measure of damages is the cost charged by Classic Lighting [] to clean and restore all smoke damaged light fixtures at [Classic Lighting's] property, an[] amount totaling $346,500.00[?]

5. Whether the trial court erred in denying [Classic Lighting's] [m]otion for [p]ost-[t]rial [r]elief when [Erie Insurance] admitted through its representative that [Erie Insurance] owes in damages the total cost estimated by [Classic Lighting] to clean the fixtures[?]

6. Whether the trial court's denial of [Classic Lighting's] [m]otion for [p]ost-[t]rial [r]elief constitutes an abuse of discretion, a mistake of fact and an error of law[?]

Classic Lighting's Brief at 2-3.

- 5 -

We address Classic Lighting's six issues together because they all contest how the trial court weighed the evidence to arrive at the amount of damages. We begin by noting our standard of review for appeals from bench trial verdicts.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.
>
> …
>
> Ordinarily, "[i]t is well established that the credibility of witnesses is an issue to be determined by the trier of fact. On appeal this Court will not revisit the trial court's determinations ... regarding the credibility of the parties. Thus, [an] argument, which would require this Court to revisit and essentially reverse the [trial court] on his credibility determinations, provides no grounds for relief." **Woods v. Cicierski**, 937 A.2d 1103, 1105 (Pa. Super. 2007) (internal citations omitted).

- 6 -

***Stephan v. Waldron Elec. Heating and Cooling LLC***, 100 A.3d 660, 664-665, 667 (Pa. Super. 2014) (alterations in original; citation omitted).

Specifically, Classic Lighting contends that the "undisputed" testimony of Fasone established that it would cost Classic Lighting $346,500.00 to clean all of the soot and smoke damaged lighting fixtures. Classic Lighting's Brief at 16-17. The trial court, however, unequivocally determined Fasone's testimony was not credible, explaining as follows.

> [Classic Lighting] failed to present credible evidence in favor of its contention that it would expend an additional $346,500.00 when cleaning its soot and smoke damaged inventory of lighting fixtures. [Classic Lighting] presented no expert testimony in support of its claim. It sought to establish its right to relief by presenting the testimony of owner [] Fasone; however, he was completely unable to testify to any facts in support of [Classic Lighting's] contention that it was entitled to a $346,500.00 judgment. He testified that [Classic Lighting] did not employ the service of a professional remediation company that specialized in mitigation of smoke and soot damage. Instead, [Classic Lighting] chose to have its own employees clean each lighting fixture by hand prior to the sale of the fixture. According to the testimony of Mr. Fasone, prior to the fire, [Classic Lighting] had an established policy of cleaning each lighting fixture at the time of sale prior to delivering the fixture to a purchasing customer. He also testified that [Classic Lighting's] employees were constantly cleaning the inventory of lighting fixtures. Mr. Fasone testified that each lighting fixture needed several hours of additional cleaning, at the point of sale, after being damaged by soot and smoke.
>
> Mr. Fasone estimated that [Classic Lighting] had around 1,900 soot and smoke damaged fixtures in its inventory immediately after the fire. Of those

damaged fixtures, he estimated that [Classic Lighting] had cleaned and sold around 200 fixtures since the fire, which left an estimated inventory of 1,700 damaged lighting fixtures. Mr. Fasone provided no receipts, records or other documentation to establish the additional labor or expense incurred by [Classic Lighting] in cleaning the damaged inventory, and he failed to provide concrete evidence as to the expense [Classic Lighting] would have incurred in remediating its remaining inventory. Mr. Fasone failed to establish that [Classic Lighting] would even sell its remaining inventory. The only thing that Mr. Fasone could establish was that each lighting fixture was unique, and that each individual fixture would take a varying amount of time to clean. In fact, he was completely unable to testify to a specific monetary amount necessary to remediate the smoke and soot damage. The following exchange took place on the record:

> THE COURT: You didn't answer my question. I said how is the [trial] [c]ourt to analyze your claim when you can't even determine before me how much it's going to cost you for each one? Some are like this, some are like that.
>
> [FASONE]: It's hard for me to give you a price.
>
> THE COURT: I said what is the [trial] [c]ourt supposed to do with that? How am I supposed to evaluate that?
>
> [FASONE]: I see what you're saying. I mean, if you wanted a price for overall, for all the cleaning of one thing.
>
> THE COURT: I want you to give me something that I can hang my hat on other than ["]just give me money.["] Again, as I said before, if you had paid somebody to do it … you could hand us the receipt and said I paid everybody to do this … I probably would give you that because you paid somebody, but you haven't done that. Instead what you have done is said

["]as I sell them, I'm going to clean them.["] How much is it going to cost you? Well, it depends. I want to be fair to you, but what's fair?

[FASONE]: Exactly what I told you. Small runs, simple runs is 20 bucks an hour.

THE COURT: Well, wouldn't it help if you would tell me how many simple ones there are and how many complicated ones there are? How many really complicated one[s] there are? Again, if there was no damage to them, you would have given them at least a one-hour cleaning anyway. But if they are damaged, you're going to add another three hours and that's going to cost for this so much, for this so much, for this so much. Then you can give me a number. But instead of just telling me – so what am I supposed to do with that?

[FASONE]: It's hard for me to describe how much a piece.

…

Th[e] [trial] [c]ourt was simply unwilling to award damages in the amount of $346,500.00 in an evidentiary vacuum when it was [Classic Lighting's] burden to establish a right to relief.

Trial Court Opinion, 3/26/15, at 11-13.

After carefully reviewing the certified record, we conclude that the trial court's findings are supported by the evidence in the record. The testimony of Park, Erie Insurance's expert, established that the total cost to restore the

damaged fixtures was $104,093.26.[2]  The trial court explicitly found Park's testimony credible.  Further, the trial court found Fasone's testimony was not credible.  Classic Lighting's argument on appeal would require us to revisit and reverse these credibility determinations, and, as such, it provides no grounds for relief.  *See Stephan*, *supra*.

For the foregoing reasons, we conclude all of Classic Lighting's issues are meritless.  Therefore, we affirm the trial court's October 13, 2014 judgment.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/17/2015

_____

[2] Moreover, we note that in its brief, Classic Lighting misconstrues the testimony of Fasone.  Fasone never testified to a specific damage amount at trial.  Instead, Fasone estimated that the simpler lighting fixtures would cost $20.00 per hour to clean while the more complex ones would cost $60.00 per hour.  Fasone did not specify how many of the 1,900 damaged items required simple cleaning, and how many required complex cleaning.  In its brief, however, Classic Lighting acknowledges its calculation of $346,500.00 in damages is based on "1925 items [] multiplied by an average of three hours of extra cleaning that each item requires at a rate of $60.00 per hour[.]"  Classic Lighting's Brief at 7.  Therefore, Classic Lighting's calculation of damages is not supported by Fasone's testimony or any other evidence of record.