J-A13024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| J.R. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| J.P.B., II | : | No. 1785 EDA 2020 | |

Appeal from the Order Entered August 26, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  No. 1912V7926

BEFORE:   BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                **FILED AUGUST 10, 2021**

Appellant, J.P.B, II, appeals from the August 26, 2020 Order that denied the Petition for Protection from Abuse Order ("PFA Petition") that Appellant filed against her ex-boyfriend J.R. ("Appellee") pursuant to the Protection From Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-22.  Upon review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

The relevant factual and procedural history is as follows.  Appellant and Appellee were previously in a romantic relationship and have a biological child together.  Appellant alleges a history of violent altercations with Appellee. Most recently, on December 30, 2019, a police officer responded to the scene after Appellant alleged that Appellee slapped her, head-butted her, and bit her hand during a verbal altercation outside of their home.

---

[*] Former Justice specially assigned to the Superior Court.

Appellant subsequently filed a PFA Petition and, on December 30, 2019, the court granted Appellant a temporary PFA Order against Appellee.

During a two-day hearing, the trial court heard testimony from responding Police Officer John Lordan, Appellant, and Appellee. Appellant submitted into evidence a copy of the December 2019 police report and pictures of her alleged injuries. On August 26, 2020, the trial court found Appellant's testimony in support of her PFA Petition to be wholly uncredible and denied Appellant's PFA Petition.[1]

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

**ISSUES RAISED ON APPEAL**

Appellant raises the following issues for our review:

1. Did the trial court abuse its discretion in making credibility determinations that are not supported by the record?

2. Did the trial court abuse its discretion in finding Appellant's injuries were self-inflicted as this finding was not supported by the record?

3. Did the trial court abuse its discretion in requiring Appellant present medical evidence and expert testimony in order to be found credible?

4. Did the trial court err in holding Appellant to a higher standard of proof than preponderance of the evidence by requiring Appellant to submit medical evidence?

---

[1] Appellee also filed a PFA Petition against Appellant, which the trial court denied. That Order is not a subject of this appeal.

5. Did the trial court err in finding the evidence was insufficient to support that Appellee caused bodily injury to Appellant intentionally, knowingly or recklessly?

6. Did the trial court abuse its discretion in permitting questioning of Appellant regarding her mental health and prescribed medications?

7. Did the trial court abuse its discretion in relying on inadmissible hearsay evidence regarding Appellee's employment and Appellant's contact with Appellee's employer?

Appellant's Br. at 4 (reordered and numbered for ease of disposition, some capitalization omitted).

**LEGAL ANALYSIS**

In a PFA action, this Court reviews the trial court's legal conclusions for an error of law or an abuse of discretion. ***Custer v. Cochran***, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*). A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." ***Mescanti v. Mescanti***, 956 A.2d 1017, 1019 (Pa. Super. 2008) (citation omitted). Moreover, on appeal, this Court will defer "to the credibility determinations of the trial court as to witnesses who appeared before it." ***Karch v. Karch***, 885 A.2d 535, 537 (Pa. Super. 2005). It is well-settled that "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Commonwealth v. Walsh***, 36 A.3d 613, 619 (Pa. Super. 2012) (citation omitted). Finally, we review the evidence of record in the light

- 3 -

most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court. **Snyder v. Snyder**, 629 A.2d 977, 982 (Pa. Super. 1993).

The purpose of the PFA Act is "to protect victims of domestic violence from those who perpetrate such abuse" and "its primary goal is advanced prevention of physical and sexual abuse." **Lawrence v. Bordner**, 907 A.2d 1109, 1112 (Pa. Super. 2006) (citation and internal quotation marks omitted). The PFA Act defines the term "abuse" in pertinent part as, "[a]ttempting to cause or intentionally, knowingly or recklessly causing bodily injury" or "[p]lacing another in reasonable fear of imminent serious bodily injury." 23 Pa.C.S. § 6102(a)(1), (2). When hearing evidence in a PFA case, "the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury[.]" **Raker v. Raker**, 847 A.2d 720, 725 (Pa. Super. 2004). The intent of the alleged abuser is "of no moment." **Id.** The petitioner must prove that "abuse" occurred by the preponderance of the evidence, which this Court has defined as "the greater weight of the evidence, *i.e.*, to tip a scale slightly[.]" **Id.** at 724.

**Trial Court's Credibility Determinations**

In her first three issues, Appellant challenges the trial court's credibility determinations. Appellants Br. at 4. Specifically, Appellant avers that the trial court made an unsupported finding that Appellant self-inflicted the alleged injuries to her hand and head. **Id.** at 18. Appellant further contends that the trial court abused its discretion when it used this unsupported finding,

as well as the absence of medical or expert testimony, to support the court's determination that Appellant's testimony was not credible. *Id.* at 12-13, 21-22. Appellant is not entitled to relief.

As stated above, "it is well established that the credibility of witnesses is an issue to be determined by the trier of fact." *Woods v. Cicierski*, 937 A.2d 1103, 1105 (Pa. Super. 2007). Moreover, on appeal, this Court will not revisit the trial court's credibility determinations. *Id.* Thus, any argument that would require this Court to revisit and essentially reverse the trial court based on its credibility determinations provides no grounds for relief. *Id.*

Instantly, the trial court opined "[Appellant]'s testimony contained numerous falsehoods, and accordingly, her entire testimony was deemed to be incredulous. . . . The trial court was able to observe Appellant's demeanor and assess her credibility through a virtual format. At the conclusion of the hearing, it was apparent that Appellant had not truthfully testified." Trial Ct. Op., filed 11/17/20, at 3. We decline to revisit the trial court's credibility findings. Thus, Appellant's challenges to the trial court's credibility determinations do not provide grounds for relief.

**Lack of Medical Evidence**

In her fourth issue, Appellant avers that the trial court erred when it required her to submit medical evidence to prove the allegations in her PFA Petition, thus holding her to a higher standard of proof than the PFA Act requires. Appellant's Br. at 4. Essentially, Appellant argues that the trial court

erred when it denied Appellant's PFA Petition based on the lack of medical evidence presented during the hearing. *Id.* at 10-11.

However, in its Opinion, the trial court explained that it based its decision to deny Appellant's PFA Petition on Appellant's incredulous testimony rather than the lack of medical evidence. The trial court opined: "the trial court concluded that Appellant testified falsely and that there was no credible, independent evidence to corroborate the assertions contained in her petition. The trial court did not rely on the lack of medical evidence to support its conclusions." Trial Ct. Op. at 6. The record supports the trial court's conclusions, and, as stated above, we decline to overturn the trial court's credibility determinations or reweigh the evidence. Accordingly, this issue lacks merit.

**Sufficiency of Evidence**

In her fifth issue, Appellant asserts that the trial court erred in finding the evidence insufficient to prove that Appellee knowingly, intentionally, or recklessly caused bodily injury to Appellant. Appellant's Br. at 26. Appellant argues that Appellee's testimony regarding a December 2018 incident, where Appellee admits to pushing Appellant against a wall and shutting a door on her hands in response to her hitting and punching him, is sufficient to prove that Appellee caused bodily injury to Appellant under the PFA Act. Appellant's Br. at 26.

While Appellant characterizes Appellee's actions as intentional or reckless, the trial court made a finding that they were "inadvertent." Trial Ct.

Op. at 6. The trial court opined, "the trial court determined no level of intent, either intentional, knowing, or reckless, was present because it was an accident. As for the marks on Appellant's wrist, they were inadvertent consequences from [Appellee] defending himself from a physical assault from Appellant, and not the result of intentional or recklessness conduct." *Id.* at 6. Appellant asserts that this finding is not supported by the record, but our review of the record belies this claim.

Appellee testified to an incident when a cable guy came to the house and Appellant was upset that he did not wake up in time. N.T. Hearing, 8/26/20, at 59. Appellee stated that Appellant was yelling and "she must have punched me like six times in the face. And then I pushed her against the wall." *Id.* Appellee further testified that he was starting to leave and "she started attacking me, and then she grabbed my . . . bag . . . when I was going town the steps . . . pulls me up, starts hitting me. I had scratch marks all over my face and everything. So, and then, that's when I shut the door, I guess, on her hands. I guess." *Id.* Appellee's testimony supports the trial court's findings that Appellee's actions were not intentional or reckless, but, rather, inadvertent. As the record supports the trial court's findings, we find no abuse of discretion.

**Cross-Examination Regarding Mental Health**

In her sixth issue, Appellant avers that the trial court abused its discretion when it permitted counsel to cross-examine Appellant regarding her mental health diagnoses and prescribed medications. Appellant's Br. at 15.

Appellant argues that the error was highly prejudicial to her because the court considered the evidence in making its adverse credibility determination regarding Appellant. *Id.* at 17. Appellant's claim lacks merit.

"The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus[,] our standard of review is very narrow." *Ferko-Fox v. Fox*, 68 A.3d 917, 928 (Pa. Super. 2013) (citation omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.* (citation omitted).

Our review of the record belies Appellant's claim that the trial court considered her mental health diagnoses or prescription medications in making its adverse credibility determination regarding her. As discussed above, the trial court made a finding that Appellant's "entire testimony was deemed to be incredulous" because the testimony "contained numerous falsehoods[.]" Trial Ct. Op. at 3. The trial court stated repeatedly in its Opinion and on the record that it did not find Appellant's testimony to be credible because Appellant testified falsely. *See also id.* at 5-7; N.T. Hearing, 8/26/20, at 90, 91, 94, 96. The trial court makes no mention of Appellant's mental health diagnoses or prescription medications in its credibility determinations.

Appellant's claim that she was prejudiced is pure conjecture and, thus, fails to constitute reversible error.[2]

**Consideration of Inadmissible Hearsay Evidence**

In her final issue, Appellant avers that the trial court erred when it considered inadmissible hearsay evidence, namely Appellee's testimony that Appellant called Appellee's work anonymously and reported that he was on drugs. Appellant's Br. at 22. Appellant concedes that the trial court correctly sustained numerous objections to the testimony, but argues that the trial court erred when it later considered the testimony when it found Appellant to be not credible and stated on the record, "[t]here is no way that I am going to believe a woman who would sit here and tell me this man is a drug user. And that I know for a fact he's not . . . I find the fact that he is a driver with a commercial license getting random drug screening, he's not a cocaine user." Appellant's Br. at 23-25 (citing N.T. Hearing, 8/26/20, at 91, 94).

_____

[2] To the extent that Appellant argues that it was improper to admit evidence regarding her mental health, this claim also fails. Appellant relies on **Commonwealth v. Davido**, 106 A.3d 611, 637 (Pa. 2014), a criminal case, to argue that the trial court erred when it permitted opposing counsel to cross-examine Appellant with regards to her mental health diagnoses and medications because the Court in **Davido** held, "[o]nly mental health disabilities that impair a witness's ability observe, recall, or report events are relevant and admissible to impeach a witness's credibility." However, Rule 611(b) of the Pennsylvania Rules of Evidence distinguishes the scope of cross-examination between criminal and civil cases, and provides a broader scope for civil cases when, as in this case, a party is being cross-examined, stating: "[a] party witness in a civil case may be cross-examined by an adverse party on **any matter relevant to any issue** in the case, including credibility[.]" Pa.R.E. 611(b) (emphasis added). Accordingly, we find **Davido** to be inapposite and non-instructive.

Appellant's claim that the trial court's findings were based on inadmissible hearsay testimony is mere speculation. In its 1925(a) Opinion, the trial court rejects Appellant's claim of error and opines that "the trial court concluded that Appellant testified falsely" without any mention of Appellee's inadmissible hearsay testimony. Trial. Ct. Op. at 7. Our review indicates that the court considered the record as a whole to reach its credibility determination and we decline to disturb that finding.

**CONCLUSION**

In sum, the trial court discredited Appellant's entire testimony in support of her PFA Petition. We decline to usurp the trial court's credibility determination or reweigh the evidence. Thus, we find no abuse of discretion or error of law in the trial court's denial of Appellant's PFA Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2021